Priority
Send
Enter
Closed
JS-5/JS-6 __NO__
JS-2/JS-3 ____
Scan Only ____

ENTERED
CLERK, U S DISTRICT COURT

AUG 1 5 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U S DISTRICT COURT

AUG 1 4 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _D.A_ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HALLE PROPERTIES, L.L.C., an Arizona limited liability company, | CASE NO.: CV 06-7695 ABC (JWJx) |
| Plaintiff, | **ORDER RE: THIRD-PARTY DEFENDANT RICHARD P. WAXMAN'S MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16** |
| v. | |
| TERRY CHANDLER BASSETT and CAROL JENNA BASSETT, Trustees of the Terry Chandler Bassett and Carol Jenna Bassett Revocable Trust dated December 30, 1996; BIG O TIRES, INC. and DOES 1-10 | |
| Defendants. | |
| TERRY CHANDLER BASSETT and CAROL JENNA BASSETT, Trustees of the Terry Chandler Bassett and Carol Jenna Bassett Revocable Trust dated December 30, 1996; BIG O TIRES, INC., | |
| Third-Party Claimant, | |
| v. | |
| MICHAEL V. BARRIERE; KCG PROPERTIES, INC., | |
| Third-Party Defendants. | |



1  MICHAEL V. BARRIERE; KCG       )
   PROPERTIES, INC.,              )
2                                 )
                   Third-Party   )
3                  Claimants,    )
                                  )
4        v.                       )
                                  )
5  TERRY CHANDLER BASSETT and     )
   CAROL JENNA BASSETT, Trustees  )
6  of the Terry Chandler Bassett  )
   and Carol Jenna Bassett        )
7  Revocable Trust dated December )
   30, 1996; WAXMAN; MADDALENA    )
8  REALTY; MR. ROLAND MADDALENA;  )
   Does 11-50,                    )
9                                 )
                   Third-Party   )
10                 Defendants.    )
                                  )
11 _____)

12       Pending before the Court are two motions filed by Third-Party

13  Defendant Richard P. Waxman ("Waxman"), a Rule 12(b)(6) Motion to

14  Dismiss and a Special Motion to Strike Pursuant to California Code of

15  Civil Procedure 425.16 (also known as an anti-SLAPP motion[1]), both

16  filed on July 25, 2007.  Third-Party Claimant Michael V. Barriere

17  ("Barriere") opposed these motions on August 6, 2007, and Waxman

18  replied on August 13, 2007.  The hearing on these matters is currently

19  set for August 20, 2007, but the Court finds them appropriate for

20  resolution without oral argument.  See Fed. R. Civ. Proc. 78; Local

21  Rule 7-15.  The Court hereby VACATES the August 20, 2007 hearing date.

22  For the following reasons, the Court DENIES Waxman's anti-SLAPP motion

23  and GRANTS Waxman's Motion to Dismiss WITH PREJUDICE.  The Court also

24  DENIES both parties' requests for attorney's fees and costs.

25

26  _____

27       [1]"SLAPP" stands for "strategic lawsuit against public
    participation."  See Kolar v. Donahue, McIntosh & Hammerton, 145 Cal.
28  App. 4th 1532, 1535 n.1 (2006).

I.   **FACTUAL BACKGROUND**

Although the situation that gave rise to this litigation is complex, Barriere's allegations relevant to resolving Waxman's two motions are straightforward and do not require the Court to resolve any factual conflicts.   Defendants Carol Bassett and Terry Bassett, through the Terry Chandler Bassett and Carol Jenna Bassett Revocable Trust (collectively the "Bassetts"), owned real property in the City of Santa Rita, on which they operated (through their wholly-owned company Tire Systems, Inc.) a franchise of Big O Tires, Inc. ("Big O").   The franchise agreement contained a clause that gave Big O the right of first refusal – a 30-day window in which to meet any bona fide offer on the real property and the franchise.   Losing money, the Bassetts decided to sell the property and the franchise.

The Bassetts engaged Barriere and Keller Williams Realty, Coastal Valley, to assist in the sale.   Barriere located Halle Properties, L.L.C. ("Halle") as a potential buyer for the real property willing to take over the franchise agreement from the Bassetts.   Barriere presented the Bassetts with a Commercial/Investment Contract of Sale with Halle, but omitted any mention of Big O's right of first refusal.   Instead, the Bassetts signed the contract as it was presented to them and sent a copy to Big O, notifying it of the sale.   Big O, however, decided to exercise its right of first refusal.   Halle then brought the instant action against the Bassetts and Big O for breach of contract and other claims, and the Bassetts brought cross-claims against Barriere for negligence and indemnity.

Waxman had represented the Bassetts in the acquisition of the property and the Big O Franchise, and the Bassetts again contacted him once in May 2006 with questions on the sale of the property and

3

1  franchise, but had no other contact with him until September 2006 when

2  the issue arose regarding Big O's right of first refusal. Barriere

3  sought Waxman's involvement in the sale in May 2006 and alleges that

4  Waxman represented the Bassetts in the course of the sale of the

5  property and franchise.[2]  Once Big O exercised its right of first

6  refusal in September 2006, however, the Bassetts did engage Waxman to

7  extricate them from the situation.

8          Barriere alleges a single claim for implied indemnity against

9  Waxman in these paragraphs of his cross-complaint:

10         7.   Third Party Complainants are informed and believe and
              thereon allege that Richard Paul Waxman ("Waxman") is and
11             was at all relevant times herein an attorney, licensed by
              the State of California, working with the firm of Wendel,
12             Rosen, Black & Dean, LLP, advising the Bassetts concerning
              their legal rights and obligations in connection with the
13             sale of the Property, pursuant to the Franchise Agreement by
              and between Bassetts and Co-Defendant, Big O Tires, Inc.
14             ("Franchise Agreement").

15         12.  Third Party Complainants are informed and believe and
              thereon allege that Bassetts consulted their attorney,
16             Richard Paul Waxman ("Waxman"), at the time Bassetts entered
              into the Listing Agreement with Third Party Complainants,
17             concerning their obligations to notify Big O Tires, Inc. of
              their intentions to sell and Big O Tires, Inc.'s rights
18             under the Franchise Agreement. Neither the Bassetts nor
              Waxman ever shared any information with Third Party
19             Complainants, other than the representations set forth in
              paragraph 11.

20
21         16.  The damages which have been alleged and the claims made
              against Third party Complainants by Bassetts in their Third-
              Party Complaint, are the legal and proximate result in whole
22             or in part of the acts of Third Party Defendants named
              herein, and each of them.

23

24  _____

        [2]Waxman disputes that he ever represented the Bassetts <u>during</u> the
25  real estate and franchise transaction. This dispute is immaterial to
    Barriere's anti-SLAPP motion because, as discussed in detail <u>infra</u>,
26  even if he acted as the Bassetts' attorney, none of his alleged
    actions fall with the anti-SLAPP statute. Further, taking Barriere's
27  allegations as true for purposes of Waxman's motion to dismiss,
    Barriere cannot state an implied equitable indemnity claim against
28  Waxman as the Bassetts' attorney.

4

17.   As a proximate result of Third Party Defendants' improper acts, Third Part Complainants have been made subject to the Bassetts' Third Party Complaint for damages and attorneys' fees and costs.

(Third-Party Complaint ¶¶ 7, 12, 16-17.)

## II.   SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

### A.   Legal Standard

California Code of Civil Procedure section 425.16, which provides authority for anti-SLAPP motions, states:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the Plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).[3]  A SLAPP suit is "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." Wilcox v. Superior Court, 27 Cal. App. 4th 809, 815 n.2 (1994), disapproved on other grounds, Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 68 n.5 (2002).  In ruling on anti-SLAPP motions, a court engages in a two-step process. Equilon, 29 Cal. 4th at 67.  The defendant bringing the anti-SLAPP motion must first make a prima facie showing that the action arises from an act in furtherance of his or her constitutional rights of petition or free speech with respect to an issue of public concern. Id. ("The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California

_____

[3]The Ninth Circuit allows litigants to bring anti-SLAPP motions in federal court. See, e.g., United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 971-73 (9th Cir. 1999).

1   Constitution in connection with a public issue,' as defined in the

2   statute.").

3        An act in furtherance of a person's right of petition or free

4   speech in connection with a public issue includes:

5            (1) any written or oral statement or writing made
             before a legislative, executive, or judicial proceeding, or
6            any other official proceeding authorized by law; (2) any
             written or oral statement or writing made in connection with
7            an issue under consideration or review by a legislative,
             executive, or judicial body, or any other official
8            proceeding authorized by law; (3) any written or oral
             statement or writing made in a place open to the public or a
9            public forum in connection with an issue of public interest;
             (4) or any other conduct in furtherance of the exercise of
10           the constitutional right of petition or the constitutional
             right of free speech in connection with a public issue or an
11           issue of public interest.

12
    Cal. Civ. Proc. Code § 425.16(e).  In deciding whether the cause of
13
    action arises from protected activity by the defendant, a court
14
    considers the pleadings and the supporting and opposing declarations
15
    and documents.  See Navellier v. Sletten, 29 Cal. 4th 82, 89-90 (2002).
16
         Once the defendant makes a prima facie showing, the burden then
17
    shifts to the plaintiff to establish the probability that he or she
18
    will prevail on the stated claims.  Equilon, 29 Cal. 4th at 67.
19
    Assuming that the defendant meets its initial burden and that the
20
    plaintiff fails to show a reasonable probability of success, the
21
    complaint or offending cause of action is stricken.  Cal. Civ. Proc.
22
    Code § 425.16(b)(1).  Additionally, the defendant is entitled to
23
    recover reasonable attorney's fees as a prevailing party.  Cal. Civ.
24
    Proc. Code § 425.16(c).  As discussed below, the Court finds that
25
    Waxman has failed to meet his initial burden to show Barriere's cause
26
    of action "arises from" rights protected by the First Amendment, so
27
    the Court does not need to analyze whether Barriere will prevail on
28

                                    6

1  the merits of his claims against Waxman. See Jespersen v. Zubiate-

2  Beauchamp, 114 Cal. App. 4th 624, 632 (2004).

3     In determining whether a claim "arises from" protected activity,

4  the Court must determine whether "the act forms the basis for the

5  plaintiff's cause of action." Kolar v. Donahue, McIntosh, &

6  Hammerton, 145 Cal. App. 4th 1532, 1537 (2006). However, "the mere

7  fact an action was filed after protected activity took place does not

8  mean it arose from that activity." Jespersen, 114 Cal. App. 4th at

9  630. "The 'arising from' requirement is not always easily met. . . .

10  A cause of action may be 'triggered by' or associated with a protected

11  act, but it does not necessarily mean the cause of action arises from

12  that act." Id. (citations omitted) (emphasis in original).

13  "California courts rightly have rejected the notion that a lawsuit is

14  adequately shown to be one 'arising from' an act in furtherance of the

15  rights of petition or free speech as long as suit was brought after

16  the defendant engaged in such an act, whether or not the purported

17  basis for the suit is that act itself." Id. at 1537-38.

18     In the context of an attorney-client relationship, the anti-SLAPP

19  statute does not "turn a garden-variety attorney malpractice claim

20  into a constitutional right." Jespersen, 114 Cal. App. 4th at 632.

21  More specifically, "garden variety transactional malpractice . . .

22  does not trigger the protections of section 425.16." Peregrine

23  Funding, Inc. v. Sheppard Mullin Richter & Hampton, 133 Cal. App. 4th

24  658, 670 (2005) (emphasis added); see also Moore v. Shaw, 116 Cal.

25  App. 4th 182, 195 (2004). Both Moore and Peregrine Funding are

26  particularly instructive in this case. In Peregrine Funding, the

27  plaintiff sued its former law firm for professional malpractice based

28  on two advice letters it drafted on registration of securities long

7

1   before any litigation was commenced.   133 Cal. App. 4th at 668.   The

2   law firm brought an anti-SLAPP motion, asserting that "plaintiffs'

3   claims arose from the firm's protected speech and 'litigation

4   activity' on behalf of its clients[.]" Id.   The court denied the

5   motion, holding that "allegations of wrongdoing pertaining to these

6   advice letters do not concern any petitioning activity by Sheppard on

7   its own behalf or on behalf of a client.   The letters were not

8   writings made before a judicial proceeding, or in connection with an

9   issue under review by a court." Id. at 670.

10       Similarly, in Moore, the plaintiff alleged that his attorney

11   intentionally and negligently participated in the breach of trust by

12   drafting a trust termination agreement she knew would be null.   116

13   Cal. App. 4th at 190.   The attorney brought an anti-SLAPP motion,

14   suggesting that the plaintiff's "causes of action arose from [the

15   attorney's] conduct in representing [her clients] and their exercise

16   of the constitutional rights of freedom of speech and petition for

17   redress of grievances in the context of probate[.]" Id.   The court

18   denied the motion, holding that "[t]he act by [the attorney]

19   underlying [the plaintiff's] causes of action was her drafting of the

20   termination agreement to enable George to terminate the [trust]

21   prematurely.   That conduct by [the attorney] was not an act in

22   furtherance of the right of petition or free speech, and therefore an

23   anti-SLAPP motion did not lie." Id.[4]

24   _____

25       [4]Barriere's cross-claim for implied indemnity is not a direct
    claim of malpractice by a client against an attorney.   Rather, it
26   involves Barriere's attempt to hold Waxman accountable for his alleged
    joint tortfeasor status in negligently failing to advise the Bassetts.
27   See California State Auto Ass'n Inter-Ins. Bureau v. Bales, 221 Cal.
    App. 3d 227, 230 (1990) (stating that when an "injury is caused by two
28                                                              (continued...)

**B.   Analysis**

To demonstrate the free speech and petition nature of his claims, Waxman presents two interpretations of Barriere's "cause of action" for implied indemnity.  First, he claims that Barriere's cause of action "is based upon the Bassetts' filing, through Waxman's office, a Third Party Complaint against the Brokers in the underlying action brought by Halle on the Sale Contract."  (Mot. at 12:20-23.)  Second, he asserts that Barriere "sued Waxman because he had the temerity to advise his clients as to their legal rights with respect to the sale transaction with Halle and with respect to their claims against Brokers set forth in the Third Party Complaint filed by the Bassetts' legal counsel on the Bassetts' behalf."  (Id. at 14:23-28.)  Neither of these formulations accurately describes the conduct from which Barriere's implied indemnity arises.

Nowhere in Barriere's claims against Waxman does he, at any time, refer to Waxman's advice to his clients regarding any part of this proceeding.  Rather, Barriere's cross-complaint clearly alleges an indemnity claim based on Waxman's negligent failure to advise the Bassetts that Big O had a right of first refusal in the sale of the property and franchise.  Barriere's indemnity claim is based on Waxman's alleged omission, not on any "writings made before a judicial proceeding, or in connection with an issue under review by a court."

---

⁴(...continued)
or more tortfeasors, the tortfeasors may claim against each other for implied equitable indemnity.").  However, to establish his claim for implied indemnity, Barriere must prove that Waxman was, in fact, negligent in failing to advise the Bassetts about Big O's right of first refusal.  Therefore, the decisions relating to attorney malpractice claims in Moore and Peregrine Funding, are directly relevant to the issues here.

1 | Peregrine Funding, 133 Cal. App. 4th at 670.  Similarly, Barriere is

2 | clearly not alleging a cause of action against Waxman for his

3 | "temerity" to advise his clients as to their legal rights.  In fact,

4 | precisely the opposite is true: Barriere's indemnity claim is based on

5 | an alleged failure by Waxman to advise his clients of the right of

6 | first refusal clause.  Therefore, "it appears that the alleged

7 | attorney malpractice did not consist of any act in furtherance of

8 | anyone's right of petition or free speech, but [the attorneys']

9 | negligent failure to do so on behalf of their clients."  Jespersen,

10 | 114 Cal. App. 4th at 631 (emphasis in original).

11 |     View in the proper light, Barriere's claim for indemnity in no

12 | way "arises from" Waxman's (or his clients') acts in furtherance of

13 | free speech or petition rights.  As noted above, Barriere bases his

14 | claim on Waxman's alleged negligence in failing to advise the Bassetts

15 | of Big O's right of first refusal, which is an omission that occurred

16 | long before any legal proceedings were initiated and related solely to

17 | the real estate and franchise transaction taking place.  Like the

18 | claims in both Moore and Peregrine Funding, this is a "garden variety"

19 | transactional malpractice claim that involves no constitutional rights

20 | to petition or free speech.  See Moore, 116 Cal. App. 4th at 195;

21 | Peregrine Funding, 133 Cal. App. 4th at 671.[5]  Therefore, Waxman's

22 | anti-SLAPP motion is DENIED and the Court need not consider whether

23 |

24 |

25 |     [5]Waxman cites City of Santa Monica v. Stewart, 126 Cal. App. 4th
43 (2005) as a case analogous to this situation.  However, in that

26 | case, the court found that a claim arose from protected activity
because it was clear from the facts that the cross-claim was based on

27 | the plaintiff's acts in intervening in an earlier litigation.  As
discussed above, because Barriere's indemnity claim cannot properly be

28 | characterized as arising from Waxman's litigation conduct, Stewart is
inapposite.

1  Barriere has carried his burden to prove he will prevail on the merits

2  of his claim.[6]

3  **C.   Attorney's Fees**

4  Waxman claims attorney's fees arising from this motion. The

5  anti-SLAPP statute mandates attorney's fees for a party who brings an

6  anti-SLAPP motion that is granted. See Cal. Code Civ. Proc. §

7  425.16(c) ("[A] prevailing defendant on a special motion to strike

8  shall be entitled to recover his or her attorney's fees and costs.").

9  Because the Court denies Waxman's anti-SLAPP motion, he has not

10  "prevailed" and his request for attorney's fees and costs is DENIED.

11  Barriere claims attorney's fees and costs for having to defend

12  the motion. The anti-SLAPP statute also allows a court to award

13  attorney's fees to a plaintiff defending an anti-SLAPP motion that was

14  "frivolous" or "solely intended to cause unnecessary delay." Id. ("If

15  the court finds that a special motion to strike is frivolous or is

16  solely intended to cause unnecessary delay, the court shall award

17  costs and reasonable attorney's fees to a plaintiff prevailing on the

18  motion[.]"). Barriere argues that Waxman's motion is "frivolous"

19  because it was not granted. If this were the rule under section

20  425.16(c), attorney's fees would become automatic for any successful

21  opposition, without regard to the "frivolous" or "intended to cause

22  unnecessary delay" requirements. Waxman's characterization of

23  Barriere's claims was colorable, even if ultimately wrong, and the

24  Court cannot say that "any reasonable attorney would agree that an

25  _____

26  [6]Waxman also asserts a "litigation privilege" under California
   Civil Code section 47(b). However, the Court rejects this contention
27  because Waxman relies on the same faulty premise that Barriere's
   indemnity claim is based on Waxman's litigation activities, not on
28  acts undertaken long before litigation was commenced.

1 anti-SLAPP motion did not lie under these circumstances and that the

2 instant motion was totally devoid of merit." Moore, 116 Cal. App. 4th

3 at 200. Therefore, Barriere's claim for attorney's fees and costs is

4 DENIED.

5 **III. RULE 12(B)(6) MOTION TO DISMISS**

6     **A. Legal Standard**

7     In addition to the anti-SLAPP motion, Waxman also brings a motion

8 to dismiss Barriere's cross-claim for indemnity. A Rule 12(b)(6)

9 motion tests the legal sufficiency of the claims asserted in the

10 complaint. A Rule 12(b)(6) dismissal is proper only where there is

11 either a "lack of a cognizable legal theory" or "the absence of

12 sufficient facts alleged under a cognizable legal theory." Balistreri

13 v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); accord

14 Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248 (9th Cir. 1997) ("A

15 complaint should not be dismissed 'unless it appears beyond doubt that

16 the plaintiff can prove no set of facts in support of his claim which

17 would entitle him to relief.'") A court must accept as true all

18 material allegations in the complaint, as well as reasonable

19 inferences to be drawn from them. See NL Industries, Inc. v. Kaplan,

20 792 F.2d 896, 898 (9th Cir. 1986); see also Russell v. Landrieu, 621

21 F.2d 1037, 1039 (9th Cir. 1980) (finding that the complaint must be

22 read in the light most favorable to the plaintiff). However, a court

23 need not accept as true unreasonable inferences, unwarranted

24 deductions of fact, or conclusory legal allegations cast as factual

25 allegations. See Western Mining Council v. Watt, 643 F.2d 618, 624

26 (9th Cir. 1981); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973

27 (8th Cir. 1968).

28     Moreover, in ruling on a 12(b)(6) motion, a court generally

1   cannot consider material outside of the complaint (e.g., those facts

2   presented in briefs, affidavits, or discovery materials). See Branch

3   v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). A court may, however,

4   consider exhibits submitted with the complaint. See id. at 453-54.

5   Also, a court may consider documents which are not physically attached

6   to the complaint but "whose contents are alleged in [the] complaint

7   and whose authenticity no party questions." Id. at 454. Further, it

8   is proper for the court to consider matters subject to judicial notice

9   pursuant to Federal Rule of Evidence 201. See Mir, M.D. v. Little Co.

10  of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988).[7]

11      **B.   Analysis**

12      Waxman claims that California public policy precludes Barriere

13  from obtaining indemnity against him for actions he undertook as the

14  Bassetts' attorney. As one California court stated:

15      [T]he ordinary rules of implied equitable indemnity in tort
        do not apply when the claim for indemnity is made against an
16      attorney, is based on a breach of the attorney's duty to his
        or her client, and is brought by an adverse party in
17      litigation which is the same as or related to that in which
        the alleged negligence took place. . . . Perceiving that
18      attorneys would be reluctant to accept cases that might
        result in indemnity claims, and, more significantly, that if
19      faced with a potential indemnity claim, the attorney's sense
        of self-preservation might impinge on his or her duty of
20      undivided loyalty to the client, these cases have
        established an exception to the ordinary rule of equitable
21      indemnity.

22  California State Auto. Ass'n Inter-Ins. Bureau v. Bales, 221 Cal. App.

23  3d 227, 230 (1990) ("Bales"); see also Major Clients Agency v. Diemer,

24  _____

25      [7]The Court recognizes that, while it may consider matters outside
    the pleadings to rule on an anti-SLAPP motion, it may not consider
26  evidence outside the Complaint (and not properly subject to judicial
    notice) to decide Waxman's motion to dismiss. The Court has carefully
27  analyzed Waxman's motion to dismiss with this limitation in mind and
    has not considered any additional evidence offered by either party in
28  conjunction with the anti-SLAPP motion.

1  67 Cal. App. 4th 1116, 1130 (1998) (quoting same) ("Major Clients").

2  Both Bales and Major Clients are directly analogous to the instant

3  case and foreclose Barriere's claim against Waxman.

4  In Bales, an insured was injured in car accident and engaged the

5  defendant-attorney to sue the plaintiff-insurer.  221 Cal. App. 3d at

6  229.  The attorney failed to vigorously pursue claims on the insured's

7  behalf, and the insured - with new attorneys - sued the insurer for

8  bad faith claims handling.  Id. at 230.  The insurer cross-complained

9  against the insured's first attorney for implied equitable indemnity

10  for any judgment in favor of the insured.  Id.  The court dismissed

11  the insurer's cross-claim for indemnity, reasoning that the interests

12  of the insured and the insurer were potentially adverse, and requiring

13  the insured's attorney to indemnify the insurer for any acts

14  undertaken during that representation would divide the attorney's

15  loyalty to his former client.  Id. at 231.  In that circumstance, the

16  attorney may be forced to act in the interest of self-preservation or

17  in the insurer's interests, to the detriment of the client.  Id. ("In

18  effect . . . an attorney would be required to act as advocate not only

19  for his or her client, but also for an adverse party.").  Thus, "even

20  the possibility that the attorney might be subject to cross-complaint

21  gives rise to the danger that the attorney will allow his or her

22  advice to be affected by potential personal liability rather than the

23  good of the client."  Id. at 233.

24  Similarly, in Major Clients, a writer hired both an attorney and

25  an agent from the Major Clients Agency to represent him in contract

26  negotiations with a studio.  67 Cal. App. 4th at 1120.  The writer

27  then sued the studio over that contract and settled, surrendering a

28  substantial fee entitlement.  Id. at 1121.  A dispute over fees arose

1 between the writer and Major Clients Agency, which proceeded to

2 arbitration and settled. Id. Major Clients Agency then filed a claim

3 against the attorney for indemnity based on the attorney's failures

4 during the contract negotiations. Id. Relying on Bales, the court

5 foreclosed Major Clients Agency's implied indemnity claim, finding

6 that, because the agent and the writer were potentially adverse

7 parties in the negotiations, subjecting the attorney to indemnity

8 claims could divide his loyalty to his client. Id. at 1133.

9 　　　The facts in the instant case are nearly identical to the facts

10 in Bales and Major Clients. As in Bales, where the insurer sought

11 indemnity from the insured's first attorney based on damages in an

12 action between it and the insured/client, and as in Major Clients,

13 where Major Clients Agency sought indemnity from the writer's attorney

14 based on a settlement in an action between it and the writer/client,

15 Barriere is seeking indemnity from the Bassetts' attorney based on

16 claims asserted by Waxman's clients, the Bassetts, against Barriere.

17 This presents the exact situation where Waxman risks dividing his

18 loyalty to the Bassetts: with the threat of indemnity hanging over his

19 head for his alleged actions during the negotiations for the sale of

20 the property and franchise, he may act in his own interests, or even

21 in the interests of Barriere, so as to avoid indemnity liability.

22 Further, as in Major Clients, Barriere and the Bassetts were potential

23 adversaries, and became actual adversaries when Halle Property sued

24 the Bassetts and the Bassetts cross-claimed against Barriere. If

25 required to indemnify Barriere, Waxman would have been required to

26 represent the interests of his clients and an adverse party.

27 Therefore, consistent with Major Clients and Moore, the Court holds

28 that Barriere cannot state a claim for implied equitable indemnity

1   against Waxman in this circumstance.[8]

2      Waxman also argues that he owed no duty to Barriere during the

3   transaction at issue and therefore, Barriere can state no other claim

4   against him for failing to disclose the right of first refusal clause

5   in the franchise agreement.  An attorney's "duty of care in advising

6   his client [does] not extend to plaintiffs with whom his clients dealt

7   at arm's length in the absence of showing that the advice was

8   foreseeably transmitted to or relied upon by plaintiffs, or that they

9   were intended beneficiaries of a transaction to which the advice

10  pertained."  Major Clients, 67 Cal. App. 4th at 1128; see also St.

11  Paul Tit. Co. v. Meier, 181 Cal. App. 3d 948, 951 (1986) ("[A]ttorneys

12  have not been held to a duty of professional care toward adverse

13  parties, toward those parties with whom the client dealt at arm's

14  length, nor in any situation in which the imposition of such a duty

15  would intrude upon the basic attorney-client relationship." (internal

16  citations omitted)).  Barriere has not alleged that he was the third-

17  party beneficiary of Waxman's representation of the Bassetts or that

18  he relied on any advice from Waxman during the sale of the property

19  and franchise, nor could he.  As noted above, Barriere and the

20  _____

21      [8]Barriere relies on Leko v. Cornerstone Bldg. Inspection Servs.,
    86 Cal. App. 4th 1109 (2001).  However, in Leko, neither of the
22  alleged joint tortfeasors was an attorney, and the court even
    distinguished Major Clients as a special circumstance where public
23  policy considerations create an exception to implied equitable
    indemnity when an attorney is sued: "Similar considerations do not
24  apply for an indemnity claim against a home inspection company
    retained by the purchaser of real property.  Inspection companies do
25  not have a privileged, fiduciary relationship with the client, and
    their reports are not confidential.  While a potential indemnity claim
26  could detrimentally affect an attorney's advice to his or her client,
    it would seemingly enhance the performance of home inspectors by
27  inducing them to be more diligent in discovering and reporting
    potential defects."  Id. at 1117-18.
28

                                    16

1  Bassetts were potentially adverse parties who actually became adverse

2  in this case, which precludes finding that Waxman owed Barriere any

3  duty.  See Major Clients, 67 Cal. App. 4th at 1133.  Therefore,

4  Barriere cannot assert any claims against Waxman directly for failing

5  to inform him or the Barretts of Big O's right of first refusal.[9]

6     **C.   Dismissal with Prejudice**

7     Waxman asks the Court to dismiss Barriere's cross-claim with

8  prejudice.  Generally, leave to amend a complaint "shall be freely

9  granted when justice so requires."  Fed. R. Civ. Proc. 15(a).

10 However, leave may be denied where "the allegations of other facts

11 consistent with the challenged pleading could not possibly cure the

12 deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806

13 F.2d 1393, 1401 (9th Cir. 1986); see also Albrecht v. Lund, 845 F.2d

14 193, 195 (9th Cir. 1988) ("[I]f a complaint is dismissed for failure

15 to state a claim upon which relief can be granted, leave to amend may

16 be denied . . . if amendment of the complaint would be futile.").

17    Barriere claims that he "can cure any factual defects or

18 deficiencies" by amending his cross-complaint.  (Opp. at 7:7-8.)

19 However, as discussed in detail above, the deficiency in Barriere's

20 cross-claim is not factual.  As a legal matter, Barriere cannot assert

21 any implied indemnity or breach of duty claims against Waxman.

22 Barriere does not suggest what additional facts he might allege

23 relating to the property and franchise transaction, but whatever they

24 may be, they would be futile to cure the legal deficiency of the

25 cross-complaint.  See Albrecht, 845 F.2d at 196 (finding any amendment

26 ───────────────────

27    [9]Waxman again argues that the "litigation privilege" in
   California Civil Code section 47(b) precludes Barriere's indemnity
   claim.  For the reasons stated above, the Court rejects this

28 contention.

17

1  futile because they would not repair the legal defect in the

2  complaint).   Therefore, the Court dismisses Barriere's cross-claim

3  against Waxman WITH PREJUDICE.

4  **IV.   CONCLUSION**

5      The Court hereby DENIES Waxman's anti-SLAPP motion against

6  Barriere.   The Court hereby GRANTS Waxman's motion to dismiss WITH

7  PREJUDICE.   The Court DENIES both parties' requests for attorney's

8  fees and costs related to these motions.

9

10  **DATED:**          _August 14, 2007_               _Audrey B. Collins_

                                                    **AUDREY B. COLLINS**
11                                                  **UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28